UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| FANNIE M. KOLISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:16-cv-00145-JMS-MJD |
| | ) | |
| METAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| KEVIN  GRAVES, | ) | |
| | ) | |
| Intervenor Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| METAL TECHNOLOGIES, INC., | ) | |
| . | ) | |
| vs. | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiffs Fannie Kolish and Kevin Graves were employees of Metal Technologies, Inc.,

("Metal Technologies"). Ms. Kolish initiated this litigation on behalf of herself and a class of

similarly situated individuals, claiming that Metal Technologies violated the Fair Labor Standards

Act ("FLSA") and the Indiana Wage Payment Act ("IWPA") when it automatically treated short,

recorded lunch breaks of twenty minutes or less as thirty-minute, unpaid lunch breaks.  [Filing No.

1.]  Mr. Graves sought leave to intervene as a named plaintiff, [Filing No. 39], and the Court

granted that request, [Filing No. 47].  Presently pending before the Court are the following motions

filed by Plaintiffs: (1) a Motion to Certify a Combined Class Action and FLSA Collective Action,

[Filing No. 41]; (2) a Motion for Approval of Class and Collective Action Notice, [Filing No. 43];

1

and (3) a Motion for an Oral Argument on Plaintiffs' Motion for Approval of Class and Collective Action Notice, [Filing No. 44].

I.

BACKGROUND

### A. *Weil v. Metal Technologies*

This case is related to *Weil v. Metal Technologies, Inc.*, 2016 WL 286396 (S.D. Ind. 2016). The plaintiffs in *Weil* sought to certify several Rule 23 class action and FLSA collective action sub-classes. *Id.* In particular, the plaintiffs attempted to certify a Rule 23 sub-class and a collective action sub-class to address Metal Technologies' failure to pay its employees for lunch breaks of twenty minutes of less. *Id.* at *8, *15. This Court found that the plaintiffs were not adequate class representatives and on January 25, 2016, the Court denied certification of the two sub-classes. *Id.* at *16. The Court did, however, conditionally certify the following sub-classes: a Rule 23 class and a collective action class regarding an allegedly unlawful rounding policy related to clock-in and clock-out times at the beginning and end of the work day that uniformly shorted employees, and a Rule 23 class action regarding the allegedly unlawful wage deductions for uniforms. *Id.* at *16-17. Because *Weil* is related to this case, the Court has issued an entry to allow the parties to use discovery materials from *Weil* in this case. [Filing No. 45.]

### B. Metal Technologies

Metal Technologies is a manufacturing facility located in Bloomfield, Indiana, that manufactures automobile parts for car manufacturers, including General Motors, Ford, Chrysler, Hyundai, and Honda. [Filing No. 54-1 at 5.] The employees work one of the three shifts: the first shift begins at 7:30 a.m. and ends at 3:30 p.m., the second shift begins at 3:00 p.m. and ends at 11:30 p.m., and the third shift begins at 11:00 p.m. and ends at 7:30 a.m. [Filing No. 54-1 at 8.] Kirbie Conrad is the Human Resources Manager who is responsible for administering Metal

2

Technologies' payroll. [Filing No. 42-2 at 2-3.] She testified that from January 2012 to the present, Metal Technologies has employed approximately 500 to 550 employees. [Filing No. 54-1 at 2.] Metal Technologies paid its employees based on their scheduled shift times, and automatically deducted thirty minutes to account for their lunch break. [Filing No. 54-1 at 9.]

### C. Employment Handbook Policies

Ms. Conrad testified that every new employee was given a copy of Metal Technologies' Employee Handbook, [Filing No. 42-11], and that she would spend 45 minutes with each new employee going through the policies in the handbook and require the employee to read and sign a form that stated that the employee would adhere to the policies, [Filing No. 42-2 at 74-75]. The Employee Handbook states the following with respect to payment of wages and timekeeping policies:

**Time Clock Records**

By law, we are obligated to keep accurate records of the time worked by employees. This is done by either time clocks or other written documentation.

Your time punch is the only way the payroll department knows how many hours you worked and how much to pay you. Your time punch indicates when you arrived and when you departed. You are to punch in and out for lunch and for brief absences like a doctor or dentist's appointment. All employees are required to keep Human Resources, their cell leader or Shift Supervisor advised of their departures from and returns to the premises during the workday.

You are responsible for your time punch. Remember to record your time. If you forget to punch in or make an error on your punch, a "missed punch form" must be filled out with the Shift Supervisor or cell leader initials next to it for approval and Human Resources must be notified. Cell leader and Shift Supervisor time tickets require the Plant Manager's approval. You are not permitted to punch in more than 15 minutes before your scheduled starting time nor more than 15 minutes after your scheduled quitting time without the group leader or Shift Supervisor's approval. This would be considered unapproved overtime.

No one may record hours worked on another's punch or time slip for any reason. Tampering with yours or another's time punch is cause for disciplinary action, including possible immediate dismissal, of both employees. Do not alter another

person's record, or influence anyone else to alter your record for you. In the event of an error in recording your time, please report the matter to Human Resources, your group leader, or your Shift Supervisor immediately.

[Filing No. 42-11 at 7.]

With respect to business hours and work schedules, the Employee Handbook states the following:

**Business Hours**

Our regular office hours are 7:30 a.m. to 5:00 p.m., Monday through Friday. Your particular hours of work and the scheduling of your lunch period will be determined and assigned by your Plant Manager or shift supervisor. Most employees are assigned to work a 40-hour workweek. You are required to take a 30-minute unpaid lunch period daily. Please understand that you may not "work through lunch" in order to arrive late or to leave early or to work extra time, unless approved by the Plant Manager.

\* \* \*

**Work Schedules & Rules**
The normal workweek consists of five (5) days, eight (8) hours long, Monday through Friday. You will be notified promptly whenever a change is necessary. Should you have any questions concerning your work schedule, please ask your shift supervisor or Plant Manager.

[Filing No. 54-2 at 6-7.]

If any employee wished to work more than eight hours per day, the employee was required to complete an Overtime Authorization form in order to be paid for his or her time. [Filing No. 54-1 at 9-10.]

### D. Rounding of Employees' Lunches

From January 20, 2013 to March 20, 2016, Metal Technologies maintained a system that recorded the times its employees clocked out for lunch and clocked back in to return to work. [Filing No. 42-2 at 49; Filing No. 42-3; Filing No. 42-4; Filing No. 42-5; Filing No. 42-7; Filing No. 42-8.] Ms. Conrad testified that Metal Technologies paid employees for scheduled hours of

work, and rounded the time records in the company's favor and to the employees' detriment. [Filing No. 42-2 at 14-15; Filing No. 42-2 at 52-53.] According to Ms. Conrad, Metal Technologies applied its time rounding practices uniformly against all of its hourly paid employees, [Filing No. 42-2 at 40-41; Filing No. 42-2 at 64-65], and the policy punished employees for clocking in as little as one minute late, [Filing No. 42-2 at 28; Filing No. 42-2 at 72-73]. However, Metal Technologies did not take into account the employee's recorded lunch breaks that purported to demonstrate when the employee clocked out and back in, and instead automatically calculated the employee's time as though the employee took a thirty-minute, unpaid lunch break as called for by Metal Technologies policy. [Filing No. 42-2 at 49-53.]

In addition, Ms. Conrad testified that she would review the time records regarding the times that employees would clock out for lunch and clock back in to return to work, and admitted that there were times she noticed that an employee's lunch break was twenty minutes or less. [Filing No. 42-2 at 50.] She claimed that she would treat the employee's time as though he or she took a thirty-minute lunch break, despite having time clock punches that show the lunch break was twenty minutes or less. [Filing No. 42-2 at 49-53.]

According to Ms. Conrad, sometime in March 2016, Metal Technologies stopped collecting data that recorded the start and end time of the employees' lunch breaks, and the employees also stopped recording their lunch breaks. [Filing No. 42-1 at 5.] She further testified that the company continued to automatically deduct thirty minutes from each employee's work day without maintaining any other time clock system to record the duration of the lunch breaks. [Filing No. 42-1 at 5-7.]

**E. Payroll Records of Short Lunch Breaks**

Plaintiffs' counsel filed an Affidavit with a summary of time and payroll records of 275 participating plaintiffs in *Weil*. [Filing No. 42-13 at 4-7.] Plaintiffs' counsel explained that for 275 participating plaintiffs, a total of 5,814 breaks of one to twenty minutes were identified. [Filing No. 42-13; Filing No. 42-16.] Out of that number, Plaintiffs' counsel claims that the records of 228 Rule 23 class members show that there were 4,886 unpaid breaks of one to twenty minutes, which resulted in unpaid wages at the regular rate of $12,800.17. [Filing No. 42-13.] The Affidavit also explained that for the records of 47 FLSA opt-in plaintiffs, there were a total of 928 breaks of one to twenty minutes, which resulted in $3,064.04 unpaid wages at the regular rate.

**F. Class Representatives**

*1. Ms. Kolish*

Ms. Kolish was an employee at Metal Technologies who worked as a parts inspector on a line along with a team of four or five other employees. [Filing No. 54-5.] She and the employees at her line would take their lunch break around the same time. [Filing No. 54-5 at 9.] Although her typical lunch break was from 12:00 p.m. to 12:30 p.m., the length of time in her recorded lunch breaks varied. [Filing No. 54-5 at 9-10]

Ms. Kolish had twenty-four different unpaid lunch breaks that lasted between one and twenty minutes. [Filing No. 42-1 at 8-12; Filing No. 42-4; Filing No. 42-8.] She testified that although she was not verbally told to go back to work during her lunch break, she felt pressured by her supervisors to return to work, which is the reason she took short lunch breaks. [Filing No. 54-5 at 8.] The records also show that there were 88 times when Ms. Kolish clocked out and back in for lunch in the same minute. [Filing No. 42-1 at 8-12; Filing No. 54-5 at 11.] When asked why she clocked out and back in during the same minute or clocked right after clocking out for

one to a few minutes, Ms. Kolish could not recall. [Filing No. 54-5 at 11.] Ms. Kolish was never disciplined in any way. [Filing No. 42-10 at 4.] Ms. Kolish's supervisor, Duane Cunningham, stated that he never saw Ms. Kolish return early from her lunch break to begin working, that he was under the impression that Ms. Kolish took thirty-minute lunch breaks, and that had Ms. Kolish notified him that she worked during her lunch break, he would have instructed her to complete an Overtime Authorization form. [Filing No. 54-6 at 2-3.] Ms. Kolish testified that she expected to be paid for "a full 40-hour paycheck" for her work each week. [Filing No. 54-5 at 9.] She also stated that it "never occurred to her" that she should be getting paid for the part of her lunch that she worked. [Filing No. 54-5 at 9.]

On September 13, 2016, the Magistrate Judge presiding over this case held a settlement conference, [Filing No. 32], and Ms. Kolish, who was required to attend, told her attorney that she was not able to be there because she had to attend a funeral of a family member in Massachusetts, [Filing No. 54-7]. During her deposition, Ms. Kolish initially stated that she left town for the funeral on September 6, 2016 and returned the night of September 13, 2016. [Filing No. 54-5 at 3.] However, after being confronted with Facebook posts that showed she was in Indiana on September 9, 2016, Ms. Kolish changed her testimony and admitted that she had returned to Indiana on September 9, 2016, but that she left her attorney with the impression that she was still out of town. [Filing No. 54-5 at 3; Filing No. 54-5 at 5.]

### 2. Mr. Graves

Mr. Graves was hired by Metal Technologies in 2011, [Filing No. 54-8 at 3], and he resigned from his job on October 27, 2013, [Filing No. 54-2 at 1]. During his time at Metal Technologies, he was an inspector of four-cylinder engines at two separate cells, one for Hyundai and one for Chrysler. [Filing No. 54-8 at 3.] Each of those cells had two inspectors and one cell

leader. [Filing No. 54-8 at 5.] Mr. Graves' payroll records demonstrate that from January 20, 2013 until his resignation, he had 32 different unpaid lunch breaks that lasted between one to twenty minutes. [Filing No. 42-13; Filing No. 42-14; Filing No. 42-15.] He testified that he would return to work early after taking his lunch break because he wanted to get back to work. [Filing No. 54-8 at 6.] He stated that because the machines were down during lunch, he would sweep or find something else to do when he returned to work. [Filing No. 54-8 at 6.] He further testified that he was not instructed by anyone from Metal Technologies to return to work early and he was not aware if anyone else was working during their lunch break. [Filing No. 54-8 at 7.] He stated that no one else on their team worked during their lunch break, that he understood he had to complete a form to get paid for the time that he worked during his lunch break, and that he never asked to be paid for the time he spent working during his lunch break. [Filing No. 54-8 at 6-7.] In addition, Mr. Graves' supervisor, Mr. Cunningham, claimed that he had no knowledge of Mr. Graves ever working during his lunch breaks, that he believed Mr. Graves always took a thirty-minute lunch break, and that if Mr. Graves would have informed him that he worked during his lunch break, Mr. Cunningham would have instructed him to fill out an Overtime Authorization form. [Filing No. 54-6 at 2-3.]

### G. Declarations from Metal Technologies Employees

Metal Technologies obtained twenty-two declarations from employees who testified that they took a thirty-minute lunch break every day. [*See* Filing No. 54-3.] John Smith, one of the declarants, testified that regardless of what his recorded time shows, he always took a thirty-minute lunch break every day, and does not remember ever taking a lunch break of twenty minutes or less. [Filing No. 54-4 at 1.] He further testified that he was aware that Metal Technologies automatically

deducted thirty minutes for lunch breaks, and that he knew he needed to complete a form if he ever worked during his lunch break. [Filing No. 54-4 at 1.]

## II.
### DISCUSSION

At the outset, the Court notes the Seventh Circuit Court of Appeals' instruction that "employees who institute a collective action against their employer under the terms of the [FLSA] may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3)." *Ervin v. OS Rest. Servs.*, 632 F.3d 971, 973-74 (7th Cir. 2011); *see also Robertson v. Steamgard*, 2012 WL 1232090, *2 (N.D. Ill. 2012) ("the Seventh Circuit has held that the FLSA is 'amenable to state-law claims for related relief in the same federal proceeding'"). This Court will heed that instruction, and finds it proper that Plaintiffs have brought, and seek certification of, both their FLSA claims and their IWPA claims in the same litigation.

### A. Certification of Claims under Rule 23[1]

#### 1. *Rule 23 Class Certification Standard*

In deciding whether to certify a class, the Court may not blithely accept as true even the well-pleaded allegations of the complaint but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a). If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which

---

[1] The parties begin their discussion with the IWPA claims and then proceed with the FLSA claims. The Court will follow accordingly.

of three different types of classes is proposed. In this case, the Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3).

It is the plaintiffs' burden to prove first that an identifiable class exists that merits certification under Federal Rule of Civil Procedure 23(a). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The four prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all its members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Class certification is not appropriate unless the named plaintiffs establish all four prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

### 2. *Proposed Class Definition*

Plaintiffs seek to certify the following class under the IWPA:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages on one or more occasion for time worked, because the employee reported a lunch break that was between one minute and twenty minutes in duration.

[Filing No. 58 at 11.]

Plaintiffs clarify that the class will not consist of all Metal Technologies employees who worked during the relevant period of time, but merely those who followed the written policy and clocked out and back in for lunch, and whose records reflect that their lunch breaks lasted between one and twenty minutes. [Filing No. 58 at 11-12.] As proof of Metal Technologies' violation, Plaintiffs plan to rely on Metal Technologies' time and payroll records. [Filing No. 58 at 13-14.]

### 3. Tolling Statute of Limitations

Plaintiffs argue that their IWPA claims were originally raised in *Weil* when it was filed on January 20, 2015, and should be equitably tolled up until the time when the Court denied certification on January 25, 2016. [Filing No. 58 at 19.] According to Plaintiffs, "[w]hen Ms. Kolish filed her class action complaint on April 27, 2016, the statute of limitations was once again tolled on the unpaid break claims . . . ." [Filing No. 58 at 19.]

In response, Metal Technologies challenges Plaintiffs' class definition that the class would consist of employees who worked from January 20, 2013 to the present. [Filing No. 55 at 25.] It argues that although the statute of limitations was equitably tolled when *Weil* was filed, it began running again on January 26, 2016 when the Court denied class certification in *Weil* up until the time that Plaintiffs filed this cause of action on April 27, 2016. [Filing No. 55 at 25.] Thus, Metal Technologies argues that the proper date for the class definition should be April 20, 2013, not January 20, 2013, to take into account the three months that the statute of limitations ran before Plaintiffs filed this cause of action. [Filing No. 55 at 25.]

The filing of a class action suit tolls the statute of limitations for all the members of the class, but when the suit is dismissed without prejudice or when class certification is denied, the statute resumes running for the class members. *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002) (internal citations omitted).

The statute of limitations for Plaintiffs' IWPA claims was equitably tolled on January 20, 2015 at the time *Weil* was filed. *Weil* denied certification of the two sub-classes pertaining to the short lunch breaks on January 26, 2016, and the statute of limitations began to run again up until April 27, 2016 when Plaintiffs filed this cause of action. Because the claims stopped tolling during

those three months, the appropriate class definition should include employees who worked at Metal Technologies since April 20, 2013, not January 20, 2013.

### 4. *Reliability of Time and Payroll Records*

Plaintiffs claim that the time and payroll records establish that Metal Technologies failed to pay its employees their lunch breaks of twenty minutes or less. Plaintiffs plan to use the same strategy that was used in *Weil* by relying on the employees' time and payroll records to demonstrate that Metal Technologies maintains a class-wide policy or practice that violates the IWPA. That strategy seems appealing at first blush. But scrutiny of the evidence presented with regard to the instant motions reveals that it cannot be reliably employed here. Significant evidence exists that undermines the reliability of the time clock records for lunch breaks. Thus, before discussing the Rule 23 analysis, the Court will make factual findings of the evidence. *See Szabo*, 249 F.3d at 676.

In *Weil*, this Court certified two sub-classes regarding time rounding policies of when employees clocked in and out for work. *Weil*, 2016 WL 286396, *5, *11. *Weil* found that the defendant, Metal Technologies, admittedly rounded the employees' times to the employer's benefit and that unlike here, there was no credible dispute presented at the certification stage that the records accurately reflected when employees clocked in to begin their shift and when they clocked out at the end of their shift.[2] Here, Plaintiffs filed similar evidence in the form of time and payroll records that demonstrate that at times, employees clocked out for lunch periods of

---

[2] Plaintiffs also point to *Schneider v. Union Hospital, Inc.*, 2016 WL 6037085 (S.D. Ind. 2016), as support, but that case is also distinguishable. The defendant in *Schneider* admitted that it applied a rounding system that consistently benefitted the employer and did not dispute that the employees' time and payroll records were the best evidence to demonstrate the actual hours the employees worked. *Id.* at *11.

twenty minutes or less and that Metal Technologies automatically deducted thirty minutes for those lunch breaks.

However, the evidence before the Court establishes that those records do not paint an accurate picture. For example, while Ms. Kolish's time clock records show that at times she clocked out for a period of twenty minutes or less, they also establish that she clocked out and back in for lunch in the same minute on 88 different occasions. When asked why she clocked in and out in the same minute, Ms. Kolish responded, "it was not necessarily an intentional thing. I mean, I have no idea," and when asked why she did so on 88 different occasions, she stated "I don't remember. I've had a few jobs since then, and I have slept some since then." [Filing No. 54-5 at 11 (Ms. Kolish's Deposition).] There were other times when Ms. Kolish's breaks lasted only one minute, and when asked why, she again responded, "It's been so long ago. No, I don't remember. Like I said, I've had a few jobs, and I've slept since then." [Filing No. 54-5 at 11 (Ms. Kolish's Deposition).]

In addition, Metal Technologies filed declarations from twenty-two employees that state that despite what the records show, they always took thirty-minute lunch breaks. Plaintiffs claim that the declarations do not have probative value, are unreliable, and to the extent that they contain any contradictions, cannot create an issue of material fact by merely manufacturing a conflict in the testimony. The Court finds the affidavits are admissible, probative, and do in fact undermine the reliability of the duration of the employees' lunch break time clock punches. Further they are consistent with the questions raised by Ms. Kolish's own testimony and records which undermine the reliability of the time records.

Plaintiffs attempt to shore up their reliance on the records by citing to the Employee Handbook policy that states that the only way Metal Technologies knows how many hours the

employee worked and how much to pay him or her is by using the employee's time punch. However, Metal Technologies points to other policies in the Employee Handbook that provide that employees were required to take a thirty-minute, unpaid lunch break and that they could not work through their lunch unless it was approved. Ms. Conrad testified that employees who worked through their lunch were required to complete an Overtime Authorization form in order to be paid for that time. In addition, one of the employees stated in her declaration that if she worked during her lunch, she completed the form to be compensated for the time that she worked. [Filing No. 54-3 at 11 ("I typically do not clock in and out when I take my lunch break. However, if I work through my lunch break, I complete a form and am paid for my time. I have never had an issue with getting paid for working through my lunch break.").] Mr. Cunningham, Plaintiffs' supervisor, also stated that he would instruct employees to complete an Overtime Authorization form if they worked through their lunch.

Lastly, Plaintiffs were aware of Metal Technologies' thirty-minute, unpaid lunch break policy and they proffered no testimony that they completed Overtime Authorization forms when they worked through their lunch. Mr. Graves testified that he would take lunch breaks of twenty minutes or less, and that he would sweep or find something else to do because the machines were down during lunch. While Ms. Kolish testified that she felt pressured to return to work early, neither Ms. Kolish nor Mr. Graves testified that they were instructed to return to work early. They also testified that at the time, they did not know that they were supposed to be paid for the part of their lunch that they worked. Mr. Cunningham, who supervised Plaintiffs, testified that he never saw Plaintiffs work during their lunch breaks, and that had he known, he would have instructed them to fill out Overtime Authorization forms.

Ultimately, Plaintiffs have failed to present substantial credible evidence that the time clock records can be relied upon as an accurate measure of the actual time any employee spent on a lunch break. Whether considered a failure to meet their burden of proof or a specific finding by the Court that the time clock records are not accurate with respect to the lunch breaks – and the Court finds both – this inadequacy[3] will have significant impact on the Court's Rule 23 analysis.

### 5. *Rule 23 Analysis*

Plaintiffs claim that they meet the prerequisites of Rule 23(a) and Rule 23(b)(3). Metal Technologies challenges several aspects of Plaintiffs' position.

### a. Rule 23(a) Analysis

### i. **Numerosity**

Plaintiffs claim that numerosity is met because Metal Technologies "admits that 500 to 550 hourly paid employees have worked for Metal Technologies since January 20, 2012 . . . and all hourly paid employees were subjected to the same lunch break time tracking system, the same rule that any lunch break will be treated as an unpaid thirty (30) minute increment of time . . . , and . . . . a rule where any recorded lunch break of twenty (20) minutes or less was still treated as unpaid time." [Filing No. 58 at 21-22.]

---

[3] The Court is aware that the FLSA requires employers to make, keep, and preserve records of the individuals they employ and their wages, hours, and other conditions of employment. 29 U.S.C. § 211(c). Here, Metal Technologies' time clock records are an unreliable measure of the duration of the employees' lunches because there is evidence that disputes their accuracy, and Metal Technologies admits to automatically deducting thirty minutes for lunch breaks despite what the records showed. However, an automatic mealtime deduction is not a *per se* FLSA violation. *See*, *e*.*g*., *Cason v. Vibra Healthcare*, 2011 WL 1659381, *3 (E.D. Mich. 2011)* ("the use of an automatic meal break deduction, in itself, does not violate the FLSA"). Moreover, as stated, Metal Technologies has presented evidence that it maintained a policy, known to its employees, that they were required to take thirty-minute, unpaid lunch breaks, that numerous employees admitted to taking unpaid, thirty-minute lunch breaks despite what the records showed, and that it required employees to complete a form if they worked through their lunch.

Metal Technologies challenges this argument and claims that numerosity is not met. [Filing No. 55 at 12.] First, it claims that the number that Plaintiffs have indicated is inaccurate because the potential class would include only employees who worked at Metal Technologies from April 2013 to the present. [Filing No. 55 at 13.] Metal Technologies claims that Plaintiffs would have to demonstrate how many employees recorded their lunch breaks between one and twenty minutes, and that Metal Technologies submitted numerous declarations that show that many employees received a thirty-minute lunch break, which makes it unclear how many employees accurately recorded their lunch breaks. [Filing No. 55 at 12-13.]

In reply, Plaintiffs argue that numerosity is met because Metal Technologies uniformly and consistently applied recorded lunch breaks of twenty minutes or less as unpaid, thirty-minute breaks to the 500 to 550 employees. [Filing No. 60 at 12-13.] Plaintiffs further claim that the declarations submitted by Metal Technologies are contradicted by the actual time records, that the argument that some employees did not have recorded lunch breaks of twenty minutes or less goes to the issue of damages, and that Plaintiffs submitted records from 275 class members from *Weil* that demonstrate they had unpaid lunch breaks of twenty minutes of less. [Filing No. 60 at 13.]

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff does not need to plead or prove the exact number of class members to establish numerosity, *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989), and the court may make common sense assumptions to determine numerosity, *see Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). The Seventh Circuit has held that "[e]ven if the class were limited to 40 [members] . . . that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely

scattered and their holdings are generally too small to warrant undertaking individual actions." *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969).

Setting aside concerns about the reliability of the time clock records, Plaintiffs have demonstrated that at least 228 Rule 23 class members and 47 FLSA opt-in plaintiffs in the related *Weil* case have time and payroll records that show that they took lunch breaks of twenty minutes or less. Thus, they have met the numerosity requirement given that joinder would be impracticable.

### ii.   Commonality & Typicality

Plaintiffs claim that they have presented the common question that seeks the common answer of whether "Metal Technologies [is] liable under the FLSA and [IWPA] for each and every failure to pay wages for an unpaid break of less than twenty (20) minutes as shown on each class member's time records[.]" [Filing No. 58 at 23.] Moreover, in regards to typicality, Plaintiffs claim that Ms. Kolish, Mr. Graves, and every class member were subject to the same policy and practice, and that they all clocked out and back in for unpaid lunches that lasted twenty minutes or less. [Filing No. 58 at 24.]

In response, Metal Technologies claims that merely posing a common issue is not enough to certify a class.[4] [Filing No. 55 at 20.] Metal Technologies claims that liability under the IWPA will depend "on each employee establishing that they were not paid the 'amount due' to them based on a mutual decision between them and Metal Technologies." [Filing No. 55 at 21.] Moreover, Metal Technologies claims that it maintained a policy that employees were required to

---

[4] Metal Technologies mainly challenges Rule 23(b)(3)'s predominance requirement, but it raises arguments and cites to case law that relate to both the commonality requirement and predominance requirement. Because considerable overlap exists between commonality and predominance, the Court will incorporate the arguments relevant to the commonality requirement under this subsection.

take a thirty-minute, unpaid lunch break every day, and that employees were aware of this policy. [Filing No. 55 at 21-22.]

In reply, Plaintiffs reiterate that they present a common question that seeks a common answer: "is Metal Technologies liable under the [IWPA] for each and every failure to pay wages for an unpaid break of less than twenty (20) minutes as shown on each class member's time records?" [Filing No. 60 at 14.] Plaintiffs claim that they will prove Metal Technologies' violations using their own records. [Filing No. 60 at 14.] Moreover, Plaintiffs claim that Ms. Kolish and Mr. Graves meet the typicality requirement because they both suffered the same loss of wages when Metal Technologies treated lunch breaks of twenty minutes or less as unpaid time. [Filing No. 60 at 14.]

A class action requires "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and the plaintiff's claims or defenses must be "typical of the claims or defenses of the class[,]" Fed. R. Civ. P. 23(a)(3). Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of the case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018, (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready–Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest*, 457 U.S. at 158 n. 13. Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class

members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir.2009) (citation omitted).

According to Plaintiffs, the class action's claims arise under the IWPA, which they claim is derivative of the FLSA claims. [Filing No. 58 at 17.] Plaintiffs claim that Metal Technologies violated the following FLSA provision:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in [the] industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

[Filing No. 58 at 16 (quoting 29 C.F.R. § 785.18).]

Plaintiffs argue that the IWPA governs the frequency and amount the employer must pay its employee, and that the class has the right to be paid all earned wages in full and on time. [Filing No. 58 at 17-18.] Specifically, Plaintiffs argue that Metal Technologies violated Ind. Code § 22-2-5-1(b), which provides that "[p]ayment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment."[5] [Filing No. 58 at 18.] They claim that pursuant Ind. Code § 22-2-5-2, Metal Technologies is subject to liquidated damages and attorney fees. [Filing No. 58 at 18.]

To establish commonality, Plaintiffs claim that they present a common question that will generate a common answer. However, while they present a common question, here they fail to

---

[5] Metal Technologies claims that the IWPA has not been violated because there is no "bright-line" rule that employers must pay for break time of twenty minutes or less, and liability under the IWPA regarding the amount due would be based on whatever mutual agreement the employer had with the employee. [Filing No. 55 at 17.] The Court, however, need not make a determination on this argument because even if it found that the IWPA applied as Plaintiffs claim, the time and payroll records on which Plaintiffs rely are insufficient to demonstrate that Metal Technologies violated the IWPA on a class-wide basis.

demonstrate that Metal Technologies' time clock records will generate common answers. In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011), the Supreme Court reversed a decision to certify a class action in part because the plaintiffs failed to prove that the class had common questions of law or fact that were common to the class. The plaintiffs argued that the employer engaged in discrimination against women in violation of Title VII when local managers exercised their discretion over pay and promotions in a way that disproportionately favored men. *Id.* at 344-45. The Supreme Court held that it was not sufficient to show that all the members suffered a violation of Title VII, but that their claims needed to generate common answers to show there was "some glue holding the alleged *reasons* for all those [employment] decisions together." *Id.* at 352 (original emphasis). Moreover, the Seventh Circuit Court of Appeals in a recent opinion stated the following:

> The Supreme Court has explained that [c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury at the hands of the same defendant. But it's not enough for the plaintiffs to show that class members have all suffered a violation of the same provision of law. Instead they must show that the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members.

*McCaster*, --- F.3d at ----, 2017 WL 56298, *5 (7th Cir. 2017) (internal citations and quotation marks omitted).

Moreover, this Court in a recent decision denied class certification to plaintiffs seeking to certify an IWPA class action on similar grounds. *Walker v. Health & Hosp. Corp. of Marion Cty.*, 2016 WL 7179370, *1 (S.D. Ind. 2016). The plaintiffs in *Walker* were respiratory therapists who claimed that they and other similarly situated employees either worked through their meal breaks or had interrupted meal breaks and that instead of being compensated, the employer automatically deducted thirty minutes from their pay. *Id.* at *6. In discussing commonality, this Court found that the plaintiffs failed to provide sufficient evidence that other employees were not compensated

for their missed or interrupted meal breaks, and in particular, pointed to emails from several employees who had notified the supervisor that they had missed or interrupted meal breaks, and the supervisor had adjusted their time accordingly. *Id.*

Like *Walker*, Plaintiffs fail to proffer sufficient evidence to demonstrate that Metal Technologies maintained a policy or practice of not paying its employees lunch breaks of twenty minutes or less. As explained in the factual findings above, the time and payroll records are not reliable and do not accurately reflect the duration of all the employees' lunches. While Plaintiffs claim that they were not paid for their lunch breaks of twenty minutes or less, twenty-two employees submitted declarations that indicate that they always took a thirty-minute, unpaid lunch break, that their records do not reflect the duration of their lunch breaks, and that at least one of them completed an Overtime Authorization form when she worked through her lunch.

The Court is not making any determination as to whether Metal Technologies has violated the IWPA with respect to Ms. Kolish or Mr. Graves. Rather the Court simply finds that with regard to commonality, there is no "glue" here. By merely relying on the time and payroll records, Plaintiffs are unable to demonstrate that all the employees were subject to the same conduct – not getting paid for lunch breaks of twenty minutes or less – at the hands of Metal Technologies. Indeed the Court cannot even determine that the employees actually took a lunch break of 20 minutes or less. In order to determine whether Metal Technologies violated the IWPA, the Court would need to look beyond the employees' time and payroll records and inquire specifically into whether each class member's lunch breaks actually corresponded to the time clock entries. Thus, the common question that Plaintiffs present would almost certainly generate different responses.

In addition, with respect to typicality, Plaintiffs have also not demonstrated that their claims are typical to those of the class because, again, the records fail to demonstrate that other employees

suffered the same or any injury. Therefore, the Court finds that Plaintiffs fail to meet the commonality and typicality requirements.

### iii. Adequacy

Plaintiffs claim that Ms. Kolish and Mr. Graves are adequate class representatives because they each have the same claim for unpaid wages as the entire class, they are motivated to recover their wages and the damages of the class, and they have actively participated in the litigation. [Filing No. 58 at 25.] Plaintiffs also claim that they have retained counsel who is competent, experienced in these types of cases, and committed to the prosecution of this case. [Filing No. 58 at 25.]

In response, Metal Technologies claims that Ms. Kolish is not an adequate representative of the class because she has provided false information to the Court when she claimed that she was unable to attend a settlement conference. [Filing No. 55 at 14.] Metal Technologies argues that "[Ms.] Kolish has not only shown an *unwillingness* to attend a court-mandated conference to represent absent class members, but has also shown a *willingness* to lie in order to avoid her obligations." [Filing No. 55 at 14 (original emphases).] It further claims that Ms. Kolish's testimony is not supported by time records because Ms. Kolish claimed to clock out and back in "a lot of times" for ten to fifteen minutes, but the records demonstrate that there were only six times when she took a break between ten and twenty minutes, 88 times when she clocked out and back in the same minute, and numerous times when her breaks lasted only one to a few minutes long. [Filing No. 55 at 15.] Metal Technologies claims that Mr. Graves would not be an adequate representative because he does not have a claim under the IWPA, and Metal Technologies would be able to assert individual defenses against him. [Filing No. 55 at 16; Filing No. 55 at 19.] It argues that there is no bright-line rule of how employers must pay for break time of twenty minutes

or less under the IWPA, and that if an employee works more hours than agreed upon with the employer, the fact that the employee worked more hours is considered a breach of the employer's and employee's mutual agreement.  [Filing No. 55 at 16-17.]

In reply, Plaintiffs indicate that Ms. Kolish is willing to allow Mr. Graves to serve as the Rule 23 class representative.  [Filing No. 60 at 17.]  Plaintiffs further claim that with regard to Mr. Graves, the Employee Handbook policy promised to pay Mr. Graves based upon his time punches.  [Filing No. 60 at 15.]  Moreover, according to Plaintiffs, Mr. Graves' claim to be paid "in full" under the IWPA is derivative of his claim under the FLSA, and that an employee cannot waive his or her rights or protections under the FLSA.  [Filing No. 60 at 15-16.]

The Court is required to find whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry is comprised of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted).  To adequately represent the class, the representative plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and quotation marks omitted).

With regard to Ms. Kolish, the Court finds that her inconsistent statements to the Court render her an inadequate class representative.  The fact that she lied to her attorney regarding her inability to attend a settlement conference because she claimed to be out of town for a funeral when in reality she was in town is troubling and raises credibility problems that would prevent her from serving as an adequate class representative.  "[P]ersonal characteristics, such as the credibility and integrity of a putative class representative, have a direct bearing on their ability to adequately

represent absent members of the class." *Davidson v. Citizens Gas & Coke Util.*, 238 F.R.D. 225, 229 (S.D. Ind. 2006); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003); *Kline v. Wolf, 702 F.2d 400, 403* (2nd Cir. 1983) (upholding district court's finding that potential class representative's admitted false statements left their credibility open to serious attack).

This leaves Mr. Graves. Notwithstanding the other Rule 23 requirements, Mr. Graves would adequately represent the interest of the class. He claims he was not paid when he took his lunch breaks of twenty minutes or less, his records reflect lunch breaks of twenty minutes or less, and he was an employee during the relevant time period. The Court, likewise, finds that Plaintiffs' counsel has a sufficient interest in the outcome of the case, and is competent and motivated to litigate this case given his experience with previous class actions. Thus, Mr. Graves satisfies the adequacy requirement.

Although Plaintiffs do not meet some the Rule 23(a) requirements, the Court will go on to consider the Rule 23(b)(3) requirements.

b. Rule 23(b)(3) Analysis

Plaintiffs claim that they meet the predominance and superiority requirements under Rule 23(b)(3). They argue that "the most significant factual issue is whether Metal Technologies ignores its time records and treats its employees' recorded lunch breaks of twenty minutes or less as unpaid time," and that "the most significant legal issue is whether or not Metal Technologies was permitted by Indiana law and/or the FLSA to ignore its time records and treat recorded lunch breaks of twenty minutes or less as unpaid time." [Filing No. 58 at 27-28.] Plaintiffs argue that they meet the superiority requirement because of the difficulties and expense of prosecuting these types of claims individually. [Filing No. 58 at 28.]

In response, Metal Technologies argues that individual issues will predominate because liability under the IWPA will depend "on each employee establishing that they were not paid the 'amount due' to them based on a mutual decision between them and Metal Technologies." [Filing No. 55 at 21.] Metal Technologies claims that it maintained a policy that employees were required to take a thirty-minute, unpaid lunch break every day, that Plaintiffs were aware that they were required to take a thirty-minute lunch break, and that the Plaintiffs did not present evidence that their supervisors knew they worked during their lunch break. [Filing No. 55 at 21-22.] Thus, according to Metal Technologies, each class member would need to testify so that the Court can determine "what the agreement was between them and Metal Technologies with respect to lunch breaks." [Filing No. 55 at 23.]

In reply, Plaintiffs claim that there is nothing individualized about the class claims. [Filing No. 60 at 17.] Plaintiffs argue that they have chosen the most conservative route to establish class certification, that the time and payroll records are the best and only evidence available, and that their theory is limited to violations they can prove through Metal Technologies' own records. [Filing No. 60 at 17-18.]

Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if the court finds that the questions of law or fact common to class members predominate over any questions affecting individual members, and that a class action is superior to other available methods of adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"'Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and 23(b)(3)." *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 448 (S.D. Ind. 2012) (citations omitted). Rule 23(b)(3) permits class certification if the questions of law or fact common to class members "predominate" over questions that are individual to members of the class. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012). "The Supreme Court has discussed predominance in broad terms, explaining that the Rule 23(b)(3) 'inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Messner*, 669 F.3d at 814 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Although it is similar to Rule 23(a)'s commonality requirement, "the predominance criterion is far more demanding." *McCaster*, --- F.3d ----, 2017 WL 56298, at *5; *Messner*, 669 F.3d at 814 (quoting *Amchem Products,* 521 U.S. at 623-24).

Because Plaintiffs fail to meet the commonality requirement, they also fail to meet the predominance requirement. *See Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 355 (N.D. Ill. 2012) (denying class certification where plaintiffs had not met burden of showing they were similarly situated to other class members, and stating "Rule 23(b)(3)'s predominance requirement is more stringent than the 'similarly situated' requirement under [the FLSA]," and "Plaintiffs will not be able to prove their claims using evidence that is common to the class"). Here, individual issues would predominate over the issues common to the class. As noted above, since the time and payroll records are an unreliable barometer of whether wages were unpaid, the Court would need to look beyond the records to determine whether each employee did in fact take a lunch break of twenty minutes or less, whether Metal Technologies knew if each employee was

working through his or her lunch, and whether based on the employee's circumstances a violation of the IWPA occurred.

Plaintiffs also fail to meet the superiority requirement. Adjudicating the claims in a class action would not be superior because Plaintiffs rely on the time and payroll records that do not reliably demonstrate that Metal Technologies maintained a policy that violated the IWPA on a class-wide basis. To determine whether there was a violation, the Court would need to partake in "mini-trials" and examine the circumstances of each class member's claim.

Accordingly, the Court denies Plaintiffs' Motion to certify the IWPA claims.

### B. Conditional Certification of FLSA Claim

#### 1. Collective Action Certification Standard

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23. *Moss v. Putnam County Hosp.*, 2010 WL 2985301 (S.D. Ind. 2010). The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt in by filing a written consent with the Court, while members of a Rule 23 action are automatically included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Rule 23 and its standards governing class certification do not apply to a collective action brought under the FLSA. *Moss*, 2010 WL 2985301 at *1.

An employee may only bring a collective action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly

situated.  *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, *4 (S.D. Ind. 2010). Courts within this Circuit typically use a two-step inquiry.  *Scott v. NOW Courier, Inc.*, 2012 WL 1072751, *7 (S.D. Ind. 2012); *Lallathin v. Ro Ro, Inc.*, 2010 WL 2640271 (S.D. Ind. 2010).

The first step, also known as the notice stage, involves analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members.  *Campbell*, 2010 WL 3326752, at *3.  Although the first step of certification does not impose a high burden on the plaintiff, "this does not mean that the 'modest factual showing' is a mere formality."  *Id.* at *4.  It serves as an important and functional step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated."  *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, *4 (E.D. Wis. 2008) (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA.  *Id.* at *3.  Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns."  *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, *5 (N.D. Ind. 2006).

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs.  *Raymer v. Mollenhauer*, 2010 WL 3259346 (N.D. Ind. 2010).  Courts have held, however, that being similarly situated does not

require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 WL 3326752, at 4; *Alvarez*, 605 F.3d at 449. Accordingly, the Court will consider whether Plaintiffs have presented evidence which supports a finding that they are similarly situated to putative class members.

### 2. Proposed Collective Action Definition

Plaintiffs seek to certify the following FLSA collective action:

> Present and former hourly paid Metal Technologies employees who worked at any time from April 27, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages or overtime compensation on one or more occasions for time worked, because the employee reported a lunch break that was between one minute and twenty minutes in duration.

[Filing No. 58 at 12.]

Plaintiffs claim that all members of the collective class are similarly situated to the class representatives. [Filing No. 58 at 12.] As proof of Metal Technologies' violations, Plaintiffs plan to rely on Metal Technologies' time and payroll records. [Filing No. 58 at 13-14.]

### 3. Plaintiffs' Collective Action

Plaintiffs claim that they have demonstrated that Plaintiffs are similarly situated to their hourly-paid Metal Technologies coworkers and that they are relying on Metal Technologies' own payroll and time records, and admitted wage policies. [Filing No. 58 at 31.] They argue that the class members were subjected to the policy and practice of "systematic treatment of recorded lunch breaks of twenty (20) minutes or less as unpaid time" in violation of the FLSA. [Filing No. 54 at 31.]

In response, and similar to its challenges to the time clock records for the Rule 23 class, Metal Technologies argues that automatic lunch deductions are not a *per se* violation of the FLSA

and that Plaintiffs' evidence does not demonstrate when they and other similarly situated employees were engaged in compensable time. [Filing No. 55 at 27-28.] Metal Technologies points to Ms. Kolish as an example, and notes that her testimony was inconsistent with the records and that when asked, she could not provide an explanation regarding why she clocked out and in in the same minute. [Filing No. 55 at 28-29.] Metal Technologies also claims that it collected numerous declarations from employees indicating that they were given a thirty-minute lunch break every day and that many were not using the time clocks to accurately record their lunch breaks. [Filing No. 55 at 29-30.] Metal Technologies further claims that it maintained a policy of automatically deducting a thirty-minute lunch break unless the employee completed a form that notified the supervisor that they worked during their lunch break. [Filing No. 55 at 30.] Lastly, Metal Technologies claims that even if a common policy or practice violated the FLSA, individual issues will predominate because Metal Technologies had no knowledge that employees were working during their lunch breaks and per the time and payroll records, some of the employees were not using the time clocks to accurately record their lunch breaks. [Filing No. 55 at 31-32.]

In reply, Plaintiffs reiterate that their claims are limited to Metal Technologies' own records of employee lunch breaks of twenty minutes or less, which were required to be paid. [Filing No. 60 at 18-19.] Plaintiffs argue that Metal Technologies' "overtime authorization form" does not contain any language about missed or interrupted lunches. [Filing No. 60 at 19.] Lastly, Plaintiffs argue that whether some employees took longer lunch breaks is immaterial and that the issue of damages may be different from class member to class member, which has nothing to do with certification or this class' proof regarding a common policy or practice in violation of the FLSA. [Filing No. 60 at 20.]

As noted above, Plaintiffs claim that Metal Technologies violated the following FLSA provision:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in [the] industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

[Filing No. 58 at 16 (quoting 29 C.F.R. § 785.18).]

By solely relying on the time and payroll records, which the Court has already found to be an unreliable measure of the duration putative class members may have taken for lunch, Plaintiffs have not made the necessary modest factual showing that similarly situated members of the class were all subjected to the same policy or practice of not being paid lunch breaks of twenty minutes or less. First, even though Ms. Conrad testified to rounding lunch breaks of twenty minutes or less to thirty minutes of unpaid lunch time, rounding practices and automatic meal deductions are not *per se* violations of the FLSA. *See, e.g.,* Weil, 2016 WL 286396, at *6 ("[R]ounding practices or policies to determine the employees' hours of pay are not prohibited by the FLSA") (citing 29 C.F.R. § 785.48(b)); *see also Cason,* 2011 WL 1659381, at *3. Second, while the parties agree that Metal Technologies had a time clock that employees used to clock out and back in for lunch, the accuracy of the lunch time clock records has been undermined. As noted, Ms. Kolish's records show that she clocked out and back in during the same minute 88 times, and when asked why she did so, she could not provide an explanation. Several employees provided declarations that indicated that they always took thirty-minute lunch breaks despite what the records showed.

Additionally, Metal Technologies required employees to take thirty-minute, unpaid lunch breaks, Plaintiffs testified that they knew they were required to take thirty-minute lunch breaks, and when employees worked during their lunch breaks, Metal Technologies required them to complete an Overtime Authorization form to be paid for the time that they worked. An employer

is not required to "pay for work it did not know about, and had no reason to know about." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (plaintiffs have the burden of showing that they performed overtime work for which they were not compensated). "[A]n employer cannot be held liable for FLSA violations unless it has actual or constructive knowledge of an employee's overtime work." *Boelk v. AT&T Teleholdings, Inc.*, 2013 WL 3777251, * 6 (W.D. Wis. 2013). Constructive knowledge under the FLSA means that the employee "had reason to know" or "should have known" that its employees were performing uncompensated work. *Kellar*, 664 F.3d at 177. Here, by solely relying on the records, Plaintiffs fail to establish that Metal Technologies was aware that its employees were taking unpaid lunch breaks of twenty minutes or less. *See, e.g., Adair*, 2008 WL 4224360, at *8 (finding that plaintiffs asserted facts that supervisors knew that employees performed work before their shifts, during their meal and rest breaks, and after their scheduled shifts, but that such knowledge was insufficient evidence to establish a common policy or practice to merit conditional certification). To establish liability, the Court would need to inquire into each employee's circumstances to determine whether that employee took unpaid lunch breaks of twenty minutes or less in violation of the FLSA.

Accordingly, conditional certification of the collective action is not warranted.

## III.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Certify a Combined Class Action and FLSA Collective Action. [Filing No. 41]. In addition, Plaintiffs' Motion for Approval of Class and Collective Action Notice, [Filing No. 43], and Motion for an Oral Argument on Plaintiffs' Motion for Approval of Class and Collective Action Notice, [Filing No. 44], are **DENIED AS MOOT**.

Date: <u>February 8, 2017</u>

_(signature)_

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Robert Peter Kondras, Jr.
HUNT HASSLER KONDRAS & MILLER LLP
kondras@huntlawfirm.net

Robert F. Hunt
HUNT HASSLER LORENZ & KONDRAS LLP
hunt@huntlawfirm.net

Melissa K. Taft
JACKSON LEWIS P.C. - Indianapolis
melissa.taft@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS P.C. - Indianapolis
padgettm@jacksonlewis.com