UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| FANNIE M. KOLISH, | ) | |
| KEVIN GRAVES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-00145-JMS-MJD |
| | ) | |
| METAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

After this Court declined to certify a proposed subclass in the related pending matter *Weil v. Metal Technologies, Inc.,* 2016 WL 286396 (S.D. Ind. 2016), Plaintiffs Fannie Kolish and Kevin Graves filed a Complaint in this case against Defendant Metal Technologies, Inc. ("Metal Technologies"). The operative First Amended Complaint asserts claims against Metal Technologies for failure to pay wages under the Fair Labor Standards Act ("FLSA") and the Indiana Wage Payment Statute ("IWPS"). [Filing No. 82.] Presently pending before the Court is Metal Technologies' Motion for Summary Judgment. [Filing No. 86.] For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Metal Technologies' Motion.

I.
BACKGROUND

**A. Factual Background**

Metal Technologies is a manufacturing facility located in Bloomfield, Indiana that manufactures automobile parts for companies such as General Motors, Chrysler, Hyundai, and Honda. [Filing No. 87-1 at 7.] Manufacturing employees work one of three shifts: first shift, from 7:00 a.m. to 3:30 p.m.; second shift, from 3:00 p.m. to 11:30 p.m.; or third shift, from 11:00 p.m.

to 7:30 a.m.  [Filing No. 87-1 at 10.]  The shifts overlap by 30 minutes, and during that overlapping time, employees are relieved of their duties by the next shift's employees, and they use the remaining time to clean up their work areas and exchange information about the previous shift.  [Filing No. 87-3 at 11-2; Filing No. 87-4 at 16-17.]  Ms. Kolish worked for Metal Technologies as a parts inspector on the first shift, beginning at 7:00 a.m.  [Filing No. 87-3 at 6; Filing No. 87-3 at 12.]  Mr. Graves worked as an inspector on the "Theta cell," initially during the third shift, and eventually on the first shift.  [Filing No. 87-4 at 8; Filing No. 87-5 at 3.]

Metal Technologies used an electronic time clock to record the time that each employee clocked in and out.  [Filing No. 89-2 at 58.]  On weekdays, employees were required to take a 30-minute unpaid lunch break, for which they were instructed to clock in and out.  [Filing No. 89-2 at 58; Filing No. 89-4 at 10; Filing No. 89-4 at 63.]  Metal Technologies did not calculate employees' pay based on their time-clock punches, but instead paid employees based on their scheduled shift times, minus an automatically deducted thirty-minute lunch break.  [Filing No. 87-1 at 11.]  So employees were typically paid for eight working hours per day.  [Filing No. 87-1 at 11.]  Kirbie Conrad, Metal Technologies' Human Resources Manager, orally informed employees at the beginning of their employment that if they worked beyond their scheduled shift times, they should complete an overtime authorization form.[1]  [Filing No. 87-2 at 2.]

Metal Technologies had an Employee Manual (the "Manual"), which was provided to and discussed with all new employees.  [Filing No. 87-2 at 3; Filing No. 87-1 at 14-15.]  The first page of the Manual states that "[t]he policies in this Manual are to be considered guidelines.  Metal

---

[1] Plaintiffs dispute this fact, alleging that "Metal Technologies never instructed its employees to fill out any type of form (such as an 'overtime authorization form') to notify Metal Technologies that the employee had worked more hours than his/her normally scheduled shift hours."  [Filing No. 90 at 3.]  Plaintiffs, however, provide no citation to support this allegation, or to contradict Metal Technologies' factual allegation, which is supported by Ms. Conrad's sworn declaration.

Technologies, Inc. (MTI), at its option, may change, delete, suspend or discontinue any part or parts of the policies in this Manual at any time without prior notice. … Employees may not accrue eligibility for monetary benefits that they have not earned through actual time spent at work." [Filing No. 87-2 at 3.]  The Manual also included the following sections relevant to the instant motion:

### Business Hours

Our regular office hours are 7:30 a.m. to 5:00 p.m., Monday through Friday.  Your particular hours of work and the scheduling of your lunch period will be determined and assigned by your Plant Manager or shift supervisor.  Most employees are assigned to work a 40-hour workweek.  You are required to take a 30-minute unpaid lunch period daily.  Please understand that you may not "work through lunch" in order to arrive late or to leave early or to work extra time, unless approved by the Plant Manager.

[Filing No. 89-2 at 7];

### Work Schedule & Rules

The normal workweek consists of five (5) days, eight (8) hours long, Monday through Friday.  You will be notified promptly whenever a change is necessary.  Should you have any questions concerning your work schedule, please ask your shift supervisor or Plant Manager.

[Filing No. 89-2 at 38];

### Error in Pay

Every effort is made to avoid errors in your paycheck.  If you believe an error has been made, tell accounting immediately.  He or she will take the necessary steps to research the problem and to assure that any necessary corrections are made properly and promptly. We will then adjust your check the following week.

[Filing No. 89-2 at 56];

**Overtime Pay**

From time to time, it may be necessary for you to perform overtime work in order to complete a job on time. The Plant Manager must approve all overtime **in advance**. When it is necessary to work overtime, you are expected to cooperate as a condition of your employment. There are two types of overtime work:

- **Scheduled Overtime:** Scheduled overtime work is announced in advance and generally will involve an entire department or operation. This type of overtime becomes part of the required workweek of the people who are members of the department or operation. If you need to be excused from performing scheduled overtime, please speak with your group leader or Shift Supervisor. He or she will consider your situation and the requirements of the department or operation in deciding whether you may be excused from performing the scheduled overtime.
- **Incidental Overtime:** Incidental overtime is not scheduled; it becomes necessary in response to extenuating circumstances. It is extra time needed to complete work normally completed during regular hours. Incidental overtime may become necessary

when an illness or emergency keeps co-workers from being at work as anticipated. It may require you to return to the workplace for emergency work. The opportunity to perform incidental overtime will be given first to the employee who normally performs the task. If that employee cannot perform the overtime, the Plant Manager will offer the overtime to a suitably qualified person who is available to perform the overtime work.

You will be paid one and one-half (1-1/2) times your regular hourly wage for any time over forty (40) hours per week that you work. If, during that week, you were away from the job because of a paid holiday or vacation taken in single-day increments those hours will be counted as hours worked for the purpose of computing eligibility for overtime pay.

[Filing No. 89-2 at 56-57];

**Time Clock Records**

By law, we are obligated to keep accurate records of the time worked by employees. This is done by either time clocks or other written documentation.

Your time punch is the only way the payroll department knows how many hours you worked and how much to pay you. Your time punch indicates when you arrived and when you departed. You are to punch in and out for lunch and for brief absences like a doctor or dentist's appointment. All employees are required to keep Human Resources, their cell leader or Shift Supervisor advised of their departures from and returns to the premises during the workday.

You are responsible for your time punch. Remember to record your time. If you forget to punch in or make an error on your punch, a "missed punch form" must be filled out with the Shift Supervisor or cell leader initials next to it for approval and Human Resources must be notified. Cell leader and Shift Supervisor time tickets require the Plant Manager's approval. You are not permitted to punch in more than 15 minutes before your scheduled starting time nor more than 15 minutes after your scheduled quitting time without the group leader or Shift Supervisor's approval. This would be considered unapproved overtime.

No one may record hours worked on another's punch or time slip for any reason. Tampering with yours or another's time punch is cause for disciplinary action, including possible immediate dismissal, of both employees. Do not alter another person's record, or influence anyone else to alter your record for you. In the event of an error in recording your time, please report the matter to Human Resources, your group leader, or your Shift Supervisor immediately.

[Filing No. 89-2 at 58].

## B. Procedural History

This case is related to the pending matter *Weil v. Metal Technologies, Inc.,* 2016 WL 286396 (S.D. Ind. 2016), and arose as a result of the Court's treatment of class and collective action certification in *Weil*. Generally, *Weil* involves a series of claims raised by employees of Metal Technologies for unpaid wages and wage deductions. One proposed subclass in *Weil* was comprised of employees whom Metal Technologies had allegedly failed to compensate or had allegedly undercompensated for work performed during meal breaks. The Court denied class certification to that *Weil* subclass, concluding that the named Plaintiffs were not adequate class representatives. *Weil v. Metal Technologies, Inc.*, 260 F. Supp. 3d 1002 (S.D. Ind. 2017). Ms. Kolish and Mr. Graves then filed their Complaint in this case, raising a class and collective action lawsuit limited to the meal break claims. [Filing No. 1.] Plaintiffs filed a Motion to Certify a

Combined Class Action and FLSA Collective Action, [Filing No. 41], which this Court denied, [Filing No. 62].

Plaintiffs then proceeded individually against Metal Technologies and filed the operative First Amended Complaint. [Filing No. 82.] The First Amended Complaint alleges violations in addition to unpaid lunch breaks, including several of the claims previously raised in *Weil*. Plaintiffs challenge Metal Technologies' timekeeping and payroll practices—namely, that Metal Technologies pays employees based on their scheduled shift times, not based on their time-clock punches, and that Metal Technologies automatically deducts a 30-minute lunch break, regardless of employees' clock-outs and clock-ins. The First Amended Complaint alleges (1) failure to pay overtime wages as required by the FLSA; and (2) violation of the IWPS, including unpaid wages, illegally rounded wages, and unpaid wages for shortened or missed lunch breaks. [Filing No. 82 at 12-13.]

Presently pending before the Court is Metal Technologies' Motion for Summary Judgment, [Filing No. 86], which is fully briefed and ripe for the Court's review.

## II.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to

the summary judgment motion before them," *Johnson*, 325 F.3d at 898.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

### III.
### DISCUSSION

Metal Technologies moves for summary judgment on Plaintiffs' claims, arguing that Plaintiffs have presented no evidence establishing that they performed work for which they were not compensated.  [Filing No. 88 at 13.]  Plaintiffs' claims fall into two categories: those involving unpaid meal breaks, and those involving time-rounding at the beginning and end of Plaintiffs' shifts.  The Court addresses each in turn.

### A. Unpaid Meal Breaks

Plaintiffs challenge Metal Technologies' policy to automatically deduct thirty minutes for meal breaks as violating the FLSA, because that policy resulted in the nonpayment of overtime wages.  [Filing No. 82 at 4.]  Plaintiffs allege that they routinely took meal breaks of less than twenty minutes, or took no meal break at all, and therefore should have been paid for that working time.  [Filing No. 82 at 4.]  Metal Technologies moves for summary judgment on these meal break claims, arguing that even if Plaintiffs worked through their meal breaks, there is no evidence establishing that Metal Technologies knew or should have known that Plaintiffs were working.  [Filing No. 88 at 20.]  Plaintiffs respond that they have presented evidence sufficient to create a genuine dispute of material fact as to whether Metal Technologies knew or had constructive knowledge that they worked through their lunch breaks.  [Filing No. 90 at 22.]

The FLSA provides the following regarding an employer's payment of overtime to its employees:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a). 29 C.F.R. § 785.19 further provides that "[b]ona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. ... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." Rest periods of short duration, meaning those "running from 5 minutes to about 20 minutes" must be counted as hours worked. *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 850 (7th Cir. 2014) (citing 29 C.F.R. § 785.18).

The statute defines "employ" broadly, as "to suffer or permit to work." § 203(g). As the Seventh Circuit has explained, "[t]hat broad definition is central to the purpose of the Act. It helps prevent evasion by employers who might seek to issue formal written policies limiting overtime that are widely violated, or who might deliberately close their eyes to overtime work their employees are doing." *Allen v. City of Chicago*, 865 F.3d 936, 938-39 (7th Cir. 2017), *cert. denied sub nom. Allen v. City of Chicago, Ill.*, 2018 WL 1369175 (U.S. Mar. 19, 2018). Indeed, employers must "pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work." *Id.* at 939. That rule, however, has its limits. It "stops short of requiring the employer to pay for work it did not know about, and had no reason to know about. An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence." *Id.* An employer can, for example, exercise diligence "by establishing a reasonable process for an employee to report uncompensated work time." *Id.*

*1. Mr. Graves*

Mr. Graves testified that he routinely took meal breaks that were shorter than 20 minutes, and were therefore not *bona fide* breaks. [Filing No. 89-6 at 11.] Mr. Graves attested that "[he] just wanted to get back to work," and after taking a short meal break, he would clock back in to perform work tasks like sweeping while the machinery was shut down. [Filing No. 89-6 at 11.] The parties dispute how many times Mr. Graves took a meal break of less than 20 minutes, but they appear to agree that it occurred on at least 28 occasions. [Filing No. 88 at 21; Filing No. 90 at 7.] Metal Technologies does not dispute the existence of these shortened breaks, and it does not appear to dispute that Mr. Graves was performing work during these periods. It argues instead that it is entitled to summary judgment on this claim because Mr. Graves has presented no evidence that Metal Technologies had either actual or constructive knowledge that Mr. Graves was performing work during these time periods. [Filing No. 88 at 21.]

The Court reiterates that on summary judgment, it views the record in the light most favorable to the nonmoving party and it draws all reasonable inferences in favor of the nonmoving party. *See Darst*, 512 F.3d at 907. It is true that Mr. Graves testified that he did not know whether anyone from Metal Technologies was aware of the fact that he would routinely work through part of his meal break. [Filing No. 89-6 at 12.] But Mr. Graves need not establish that Metal Technologies actually knew that he was performing work: he may instead establish that Metal Technologies had constructive knowledge, or should have known, that work was being performed. *See Kellar*, 664 F.3d at 177. Ms. Conrad testified that she reviewed the "start and stop times and the cumulative work time based on the time punches for each employee before preparing their paycheck[s]," [Filing No. 89-4 at 22], and that she had generally reviewed employee time cards

10

and seen meal breaks shorter than 20 minutes, [Filing No. 89-4 at 64].  And on no fewer than 28 occasions, Mr. Graves' time card entries indicated a meal break of fewer than 20 minutes.

While Metal Technologies correctly points out that time card entries alone do not necessarily establish constructive knowledge on the part of the employer, other facts about the physical working environment in the facility support the existence of a genuine dispute on this issue.  Ms. Conrad testified that employees on the same shift took their meal breaks at the same time, [Filing No. 89-4 at 62], and that supervisors monitored meal breaks, [Filing No. 89-4 at 61]. Multiple individuals testified that employees would generally take their meal breaks in the break room, and employees would use time clocks located in the break room for clocking out and back in after lunch.  [*See, e.g.,* Filing No. 89-4 at 10; Filing No. 89-4 at 70-71; Filing No. 89-9 at 19.] These facts, taken together, are sufficient to establish a genuine dispute as to whether anyone from Metal Technologies was aware that Mr. Graves took shortened meal breaks in order to perform work.

Therefore, as to Mr. Graves' claim regarding unpaid meal breaks, the Court denies Metal Technologies' Motion for Summary Judgment.  [Filing No. 86.]

### 2. Ms. Kolish

Ms. Kolish testified that she would frequently take lunches of less than thirty minutes in order to return to work.  [Filing No. 87-3 at 14.]  Metal Technologies argues, as with Mr. Graves, that Ms. Kolish has presented no evidence that Metal Technologies had either actual or constructive knowledge that Ms. Kolish was performing work during these time periods.  [Filing No. 88 at 21.]

Ms. Kolish stated that after clocking out for lunch, she would clock back in early and return to her work station, sometimes with another inspector, in order to clear a backlog of parts, clean

the cell, and empty carts full of parts.  [Filing No. 87-3 at 14-15.]  Ms. Kolish testified that no one from Metal Technologies specifically requested that she cut her meal breaks short to go back to work.  [Filing No. 87-3 at 16.]  She testified, however, that she felt pressured by Metal Technologies' staff to return to work before the end of her meal break.  [Filing No. 87-3 at 16.] She stated that individuals from Metal Technologies would circle the breakroom, looking at their watches and making statements such as "[t]ime is wasting.  Parts need to get out."  [Filing No. 87-3 at 16.]  Ms. Kolish testified that, under those circumstances, "[t]hey didn't make it real easy for you to want to sit there and enjoy your lunch.  Even just their presence, you knew that they were wanting you to hurry up and get back to work."  [Filing No. 87-3 at 16-17.]  This testimony is sufficient to establish a genuine dispute of material fact as to whether anyone at Metal Technologies was aware that Ms. Kolish cut her meal breaks short in order to return to work.

However, this testimony does not create a genuine issue as to many of Ms. Kolish's lunch breaks.  Metal Technologies argues that on approximately 88 occasions, Ms. Kolish clocked out for lunch and back in within the same minute, at 12:30 p.m.  [Filing No. 87-3 at 28-30; Filing No. 42-4.]  And on other occasions, she clocked out at 12:30 p.m. and clocked back in a few minutes later.  [Filing No. 87-3 at 30; Filing No. 42-4.]  Metal Technologies points out that Ms. Kolish's time records "demonstrate the unreliability of the employee lunch punches," and argues that therefore the time clock records cannot establish that Metal Technologies was put on notice of any missed meal breaks.  [Filing No. 88 at 22.]  These irregular time clock entries do not preclude Ms. Kolish's meal break claims in their entirety, because as the Court described above, other evidence supports the conclusion that Metal Technologies was aware of the shortened meal breaks.  [*See, e.g.,* Filing No. 87-3 at 16-17 (Ms. Kolish's testimony that Metal Technologies staff would circle the breakroom, encouraging employees to "hurry up and get back to work").]

Metal Technologies also argues, regarding these irregular time clock entries, that Ms. Kolish provided no evidence that these entries accurately reflected break time—whether spent in a *bona fide* meal break or working. [Filing No. 92 at 20.] When asked to explain why she would have clocked out and back in within such a short period of time, Ms. Kolish responded that she "had no idea" and that she did not remember why. [Filing No. 87-3 at 28-30.] It is unclear whether Ms. Kolish is claiming unpaid wages for these particular lunch breaks, but she has presented no evidence that on the occasions that she clocked out and back in within a five-minute period, she did so because she was returning to work. And those time clock entries are inconsistent with the circumstances described by Ms. Kolish in which she would return early to lunch: namely, after attempting to eat lunch in the break room, but feeling pressured by Metal Technologies staff to return to work. Therefore, the Court concludes that Ms. Kolish has failed to demonstrate a genuine dispute of material fact as to whether she was working, or whether Metal Technologies had actual or constructive knowledge of her working, during meal breaks that lasted between one and four minutes.

Accordingly, the Court denies Metal Technologies' Motion for Summary Judgment as to Ms. Kolish's meal breaks that lasted between five and twenty minutes. [Filing No. 86.] The Court grants the Motion as to meal breaks lasting between one and four minutes.

As a final note regarding both Mr. Graves' and Ms. Kolish's meal break claims, while the Court ultimately concluded in the related *Weil* case that the meal breaks at issue there were not compensable, it did so based on the specific evidence adduced at trial. Likewise, the Court here bases its conclusions on the specific evidence proffered by the parties in this record.

**B. Beginning and End-of-Shift Time Entries**

In their First Amended Complaint, Plaintiffs allege that Metal Technologies has failed to pay them wages that they are due as a result of an "illegal rounding scheme" in Metal Technologies' timekeeping practices. [Filing No. 82 at 8.] Plaintiffs contend that Metal Technologies failed to compensate them for earned wages, because they were paid based only on the scheduled shift start and end times, and not the hours actually indicated by their clock-in and clock-out times. [Filing No. 82 at 2-8.] Plaintiffs allege that this rounding scheme resulted in Plaintiffs' hours being rounded down, always in favor of Metal Technologies. [Filing No. 82 at 5.]

Metal Technologies moves for summary judgment on this claim, arguing that Plaintiffs have failed to produce any evidence that they performed compensable work during the times they were clocked in beyond their scheduled shifts. [Filing No. 88 at 13.] Metal Technologies argues that Plaintiffs' own deposition testimony establishes that they did not perform compensable work outside of their scheduled shifts. [Filing No. 88 at 13-18.] But, Metal Technologies contends, even if Plaintiffs had established that compensable work occurred, they cannot show that Metal Technologies had actual or constructive knowledge of that work. [Filing No. 88 at 18-19.] Plaintiffs respond that their deposition testimony establishes that they worked while clocked in beyond shift times, and that their time sheets provide an accurate record of the hours they actually worked. [Filing No. 90 at 22.] Plaintiffs also contend that Metal Technologies knew or should have known that they were working during the times that they were clocked in. [Filing No. 90 at 23.] In reply, Metal Technologies reiterates its arguments. [Filing No. 92.]

The FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a work week. 29 U.S.C. § 207(a). An employee "bears the burden of proving that she

14

performed overtime work for which she was not properly compensated. The employer bears the burden to establish that an exemption from the FLSA applies." *Kellar*, 664 F.3d at 173. As the Court discussed in *Weil*, time spent clocked in is not automatically compensable. 29 C.F.R. § 785.48(a) specifies that:

> [t]ime clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

This regulation specifically contemplates circumstances in which there may be a difference between time clock records and actual hours worked. *See also Kellar*, 664 F.3d at 177 (employees who clock in early do not have to be paid so long as they are not working). Therefore, in order to succeed on an unpaid overtime wages claim, Plaintiffs must provide some evidence to establish that they spent time engaged in work for which they were not compensated.[2] In addition, "to state a claim under the FLSA, [the plaintiff] must show that [the employer] had actual or constructive knowledge of her overtime work." *Id.*

---

[2] Plaintiffs appear to argue that Metal Technologies contends that its timekeeping records are inaccurate, and therefore that Metal Technologies has failed to comply with the recordkeeping requirements of the FLSA. [Filing No. 90 at 18.] As such, Plaintiffs argue, they are generally under a relaxed burden to prove an FLSA violation. [Filing No. 90 at 19.] This argument mirrors one raised and addressed in *Weil*, and the Court need not belabor it here. *See Weil*, 260 F. Supp. 3d at 1013-16. Metal Technologies does not allege that its timekeeping records are inaccurate. [*See* Filing No. 92 at 11.] Rather, Metal Technologies argues that time clock records do not automatically constitute records of hours worked, and that it followed 29 C.F.R. § 785.48(a), which permits employers to disregard "minor discrepancies" created when employees voluntarily clock in and out beyond their scheduled or regular times. [Filing No. 92 at 11.] As the Court described above and in *Weil*, the Court agrees that time clock entries do not automatically reflect hours worked, and therefore it does not constitute a recordkeeping violation to fail to treat them as such. Accordingly, the Court rejects Plaintiffs' characterization of Metal Technologies' argument.

### 1. *Ms. Kolish*

Metal Technologies argues that Ms. Kolish testified that she never worked prior to the start of her shift, or after the end of her shift, and she therefore cannot establish that any illegal time-rounding occurred. [Filing No. 88 at 14.] Ms. Kolish largely fails to respond to this argument, focusing instead on her lunch-related claims. [*See* Filing No. 90 at 8-9.]

The Court concludes, based on Ms. Kolish's briefing and the evidence designated by both parties on summary judgment, that Ms. Kolish has not provided any evidence to establish that she performed work before the start of her shift or following the end of her shift.[3] Metal Technologies points to the following deposition testimony by Ms. Kolish:

> **Q**: Was there any reason that you would have to be at work prior to your scheduled start time of 7:00?
>
> **A**: No.
>
> **Q**: To your knowledge did you ever start work before your scheduled shift time?
>
> **A**: No, there's no reason to.
>
> …
>
> **Q**: Was there ever a time where you had to work beyond your scheduled shift?
>
> **A**: No.

[Filing No. 87-3 at 12; Filing No. 87-3 at 20.] Ms. Kolish does not appear to dispute these statements, and she points to no contradictory evidence. As the Court described above, Ms. Kolish must provide some evidence to establish that she was working during times for which she claims compensation. She appears to concede that (excluding the lunch claims, discussed above) she was

---

[3] Plaintiffs contend that Metal Technologies erroneously refers to these rounding claims as pre- and post-shift claims. The Court notes here that it refers to shift start and end times simply because the parties agree that employees were paid based on their scheduled shift start and end times. Therefore, any unpaid wages would necessarily include only the time worked prior to a shift's start or following a shift's end.

paid wages covering her entire shift, and she never worked beyond her scheduled shift. There is therefore no genuine dispute of material fact as to whether Ms. Kolish performed work before or after her scheduled shift time for which she was not compensated.

Accordingly, the Court grants Metal Technologies' Motion for Summary Judgment, [Filing No. 86], as to Ms. Kolish's beginning and end-of-shift rounding claims.

### 2. Mr. Graves

Metal Technologies raises the same argument regarding Mr. Graves' beginning and end-of-shift claims: that Mr. Graves' testimony establishes that he did not perform work during times that he was clocked in prior to or following his scheduled shifts. [Filing No. 88 at 15.] Metal Technologies points to the following testimony by Mr. Graves:

**Q**: Is there any reason you would need to start work before your scheduled shift time?

**A**: No.

**Q**: And just to the best of your recollection, do you ever recall starting work before the start of your shift time?

**A**: I honestly don't know, sir.

…

**Q**: And was there ever any reason why you had to work past the end of your scheduled shift?

**A**: If they needed me somewhere else. From what I remember, I'd go and—if they needed me, I would help, you know.

**Q:** Can you give me an example of why they might need you to stick around?

**A**: I remember one time, but this was like 2000—it was like when I first started. They had low manpower on one cell area, and they just needed somebody to work over like two or four hours, and I go, 'I'll glad[ly] help.' And so I did. And, you know, that's—that's probably the only one that really sticks out in my head, I would say.

**Q**: Okay. Was that presented to you as a voluntary opportunity to work overtime?

17

**A**: I don't remember.

**Q**: Okay. To your knowledge, did you get paid for that time when you worked over?

**A**: From my knowledge, yes.

[Filing No. 89-6 at 8-9.] Metal Technologies argues that Mr. Graves' testimony establishes, at best, that he does not know or remember whether he ever performed uncompensated work before or after his scheduled shift times. [Filing No. 88 at 15.]

Mr. Graves responds by pointing to testimony that he argues creates a genuine issue of material fact as to whether he performed uncompensated work. [Filing No. 90 at 6.] He argues that he testified that he would "clock in and immediately go to his 'cell area' to begin his inspection work, talk to the people on the prior shift and begin cleaning the area." [Filing No. 90 (citing Filing No. 89-6 at 4-7).] He also points to the following deposition testimony:

**Q**: And in terms of these questions you were asked about the clock, during your employment, Mr. Graves, did you ever clock in for work and not work?

**A**: Not that I remember. It's been a long time, sir.

**Q**: Did you ever stay at work after you finished working and linger for some time before you clocked out?

**A**: No, not that I can remember.

[Filing No. 89-6 at 18.]

In reply, Metal Technologies disputes the characterization of Mr. Graves' testimony as being that he would clock in and "immediately" go to his cell area. [Filing No. 92 at 5.] When asked to describe his normal workday, Mr. Graves testified that "[w]ell, it's been awhile, but I'd clock in, we'd go to the cell area, and we would talk to the previous shift…." [Filing No. 89-6 at 6.] Metal Technologies also reiterates its argument that Mr. Graves' inability to remember whether he worked beyond his scheduled shift times does not create a genuine dispute of material fact. [Filing No. 92 at 14.]

Aside from one specific instance of paid overtime, Mr. Graves' testimony establishes only that he cannot remember whether he ever worked beyond his scheduled shift hours. A lack of recollection, however, is not sufficient to establish a genuine dispute of material fact. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011) (finding testimony inconclusive, and therefore not sufficient to establish a genuine dispute of material fact, where plaintiff testified that he could not recall when or whether an event occurred); *see also Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002) (plaintiff's affidavit asserting that she did not remember seeing or receiving a brochure did not raise a genuine issue that the brochure was distributed to her in light of the uncontroverted affidavits of two other individuals that indicated the brochure was sent and presumably received); *Hudson v. C.P. Rail Sys.*, 24 Fed. Appx. 610, 613 (7th Cir. 2001) (party's "bare assertion" that he "does not recall" making inappropriate comments did not create a genuine issue of material fact).

The Court again emphasizes that time spent clocked in does not automatically equate to time spent working, and only time spent working is compensable. Mr. Graves was able, in the context of his unpaid meal break claims, to describe in deposition testimony the circumstances under which he would clock back in after taking a shortened lunch break and return to work. But he provided no such testimony in the context of beginning and end-of-shift time entries, and he has offered no other evidence to support the allegation that he was performing work while clocked in before and after his shifts.

Therefore, the Court concludes that no genuine dispute of material fact exists as to whether Mr. Graves performed compensable work while clocked in before and after his scheduled shifts and grants Metal Technologies' Motion for Summary Judgment, [Filing No. 86], as to this claim.

### C. IWPS Claims

Metal Technologies also moves for summary judgment on Plaintiffs' IWPS claims, arguing that to the extent that Plaintiffs' FLSA claims fail, their IWPS claims must also fail. [Filing No. 88 at 25.] Plaintiffs agree that their IWPS claims are derivative of their FLSA claims, "inasmuch as 'the FLSA creates liability for unpaid hours, and the Indiana Wage Payment Statute then provides a right to compensation for those unpaid hours.'" [Filing No. 90 at 21-22 (citing *Thacker v. Halter Vegetation Mgmt., Inc.*, 2015 WL 417713, at \*13 (S.D. Ind. 2015))]; *see also Kellar*, 664 F.3d at 178 ("Kellar concedes that her state law claim under Indiana's Wage Payment Statute ('IWPS') is derivative of her FLSA claim. The only difference between the two claims in this case is that Kellar's FLSA claim seeks damages for unpaid hours worked over 40 hours in each workweek, while her IWPS claim seeks damages for unpaid, pre-shift hours for those workweeks during which she worked less than 40 hours and for which the FLSA would not provide compensation. Because we have concluded that Summit is entitled to summary judgment on Kellar's FLSA claim, we conclude that Kellar's IWPS claim fails too.") (citing *Gehbauer v. Emas, Inc.,* 679 N.E.2d 1374, 1376-77 (Ind. Ct. App. 1997)).

The Court concludes that, to the extent that the Court has granted summary judgment on Plaintiffs' FLSA claims, the Court also grants summary judgment on the "derivative" IWPS claims.

### IV.
#### CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** and **DENIES IN PART** Metal Technologies' Motion for Summary Judgment, [Filing No. 86], as follows:

- The Court **GRANTS** the Motion as to Plaintiffs' claims regarding Plaintiffs' pre-shift early clock-ins and post-shift late clock-outs;

- The Court **DENIES** the Motion as to Mr. Graves' claims regarding unpaid meal breaks;

- The Court **DENIES** the Motion as to Ms. Kolish's claims regarding unpaid meal breaks lasting five minutes or longer, and **GRANTS** the Motion as to Ms. Kolish's claims regarding unpaid meal breaks of one to four minutes; and

- The Court **GRANTS** the Motion regarding Plaintiffs' derivative IWPS claims, to the same extent that it is granted as to Plaintiffs' FLSA claims.

Date: 3/30/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Robert F. Hunt
HUNT HASSLER LORENZ & KONDRAS LLP
hunt@huntlawfirm.net

Robert Peter Kondras, Jr.
HUNT HASSLER KONDRAS & MILLER LLP
kondras@huntlawfirm.net

Michael W. Padgett
JACKSON LEWIS P.C. - Indianapolis
padgettm@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS P.C. - Indianapolis
melissa.taft@jacksonlewis.com